**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| JAMES E. PRICE, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:17-CV-2835-N (BH) |
| | § | |
| DALLAS AREA RAPID | § | |
| TRANSPORTATION POLICE | § | |
| DEPARTMENT and D. DAVIS #509, | § | |
| R. CRAIG #411, J. MORRIS #182, | § | |
| M. McCRAE #97, | § | |
| Defendants. | § | Referred to U.S. Magistrate Judge[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Before the Court for recommendation is *Defendants' Motion for Summary Judgment*, filed October 29, 2018 (doc. 14). Based on the relevant filings, evidence, and applicable law, the motion should be **GRANTED**, and the Court should *sua sponte* **GRANT** summary judgment in favor of the defendants on the plaintiff's remaining claims.

**I. BACKGROUND**

While on platform duty at a Dallas Area Rapid Transit (DART) Union Station in Dallas on September 10, 2016, Officer Dakari Davis asked James E. Price (Plaintiff) if he was utilizing DART services, and Plaintiff became verbally aggressive toward him and responded with profanity. (doc. 16-1 at 1-2, 37.)[2] DART's code of conduct policy prohibits individuals from engaging in "disruptive, disturbing behavior including: loud conversation, profanity or rude insults." (*Id*. at 2, 6.) As Officer Davis walked away from Plaintiff and called police dispatch, Plaintiff walked toward

---

[1] By *Special Order No. 3-251*, this case was referred for full case management, including the determination of non-dispositive motion and issuance of findings of fact and recommendations on dispositive motions.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

him and began yelling profane and derogatory statements.  (*Id.* at 2, 19-20, 37.)  Officer Davis called

fellow Officers Robert Craig, Joe Morris, and Maurice McCrae for assistance as Plaintiff "continued

to yell profane/hate statements" toward Officer Davis and DART patrons.  (*Id.*)

Officer Davis told Plaintiff that he could not use profanity and hate statements on DART

property, and that he would have to leave if he continued to use such language, but Plaintiff

continued to use profanity and replied that he was trying to catch the train.  (*Id.* at 2, 18.)  Officer

Davis instructed Plaintiff to "come here," but Plaintiff ignored the instruction and boarded the

DART train.  (*Id.* at 2, 18-20, 37.)  Officers Davis, Craig, Morris, and McCrae (collectively, DART

Officers) followed Plaintiff to the second floor of the train and instructed him to remove himself

from the train multiple times, but Plaintiff refused.  (*Id.* at 2, 20-23, 37.)  Officer Davis then asked

Plaintiff for proof of his fare to ride the train, but Plaintiff did not have proof and instead

unsuccessfully attempted to purchase a DART pass on his cell phone.  (*Id.* at 2-3, 22-23, 37.)

Officer Davis again instructed Plaintiff to leave the train, but Plaintiff again refused and stated in

an aggressive and threatening manner that he was not going to leave the train, which gave Officer

Davis the impression that Plaintiff was preparing to physically resist and/or assault him or the other

DART Officers.  (*Id.* at 3, 22-24, 37.)

Based on Plaintiff's non-compliance and passive resistance, the DART Officers determined

that it was not safe to attempt to physically remove Plaintiff from the train.  (*Id.* at 3, 37.)  Officer

Davis sprayed Plaintiff's face with Oleoresin Capsicum (OC) spray and then placed him in

handcuffs.  (*Id.*)  As he was being escorted off of the train, Plaintiff stumbled while walking down

the stairs, but Officers McRae and Davis held him up, keeping him from making contact with the

ground.  (*Id.*)  In accordance with DART General Order 6.06 II(B) regarding the use of OC spray,

Officer Davis poured water on Plaintiff's face to wash the spray from his eyes, but Officer Davis stopped and waited for Dallas Fire Rescue to arrive after Plaintiff began to yell that Officer Davis was "water boarding" him. (*Id*. at 4, 28-29; doc. 16-3 at 8-9.) As they awaited Dallas Fire Rescue, Plaintiff "remained in an upright position, sitting on the curb and was kept in 'fresh air['] as recommended in DART General Order 6.06 III(B)." (doc. 16-1 at 4, 29-30.)

Plaintiff was arrested for criminal trespass, and in a subsequent search incident to his arrest, Officer Davis located a clear plastic bag of marijuana. (*Id*. at 4, 37-38.) Plaintiff continuously asserted that he had done nothing wrong and that he was only waiting for the train so that he could go to work. (doc. 16-3 at 9-14.) He was ultimately charged with criminal trespass under § 30.05 of the Texas Penal Code and intentionally or knowingly possessing marijuana under § 481.121 of the Texas Health & Safety Code. (docs. 16-1 at 4, 37-38; 16-5 at 3-5; 16-6 at 3-4, 7-8.) Officers Morris and McRae transported Plaintiff to the Dallas County Jail while Plaintiff continued to use profane language, and he was eventually booked into the jail along with all of his property except for the marijuana. (doc. 16-1 at 4, 38.) Officer Davis subsequently completed a Use of Force report in accordance with DART Police procedure and a Texas Incident Report. (*Id*. at 4, 33-34, 38.) On September 16, 2016, Plaintiff was formally charged by the Dallas County District Attorney's Office with criminal trespass and possession of marijuana, less than two ounces. (docs. 16-5 at 3-5; 16-6 at 3-4, 7-8.)

On September 21, 2016, Plaintiff filed a written complaint with the DART Police Internal Affairs Division complaining about his treatment by Officer Davis on the day of his arrest. (doc. 16-7 at 2, 5, 12-15.) An investigation revealed "no indication of policy violation or wrongdoing by Officer Davis" in his use of force during Plaintiff's arrest. (*Id*. at 2, 5-6.)

3

On August 21, 2017, Plaintiff entered into an agreement with the Dallas County District Attorney's Office under which his criminal charges would be dismissed if he successfully completed six hours of anger management classes and a mental health evaluation. (docs. 16-5 at 6; 16-6 at 9.) Plaintiff completed both requirements, and the charges against him were dismissed on September 21, 2017. (docs. 16-5 at 7; 16-6 at 10.)

On September 19, 2017, Plaintiff filed this *pro se* lawsuit in state court against DART and the DART Officers (collectively, Defendants) generally alleging violations of his civil rights based on his allegedly false arrest, as well as apparent state law claims for defamation and assault. (doc. 1-2 at 1, 3-4.) He seeks actual damages, exemplary damages, injunctive relief, attorney's fees, court costs, and pre-judgment and post-judgment interest. (*See id*. at 2-5.) On October 16, 2017, Defendants removed this case to federal court pursuant to 28 U.S.C. § 1446(b). (doc. 1 at 1.)

On October 29, 2018, Defendants moved for summary judgment on all of Plaintiff's claims. (docs. 14-16.) On November 20, 2018, Plaintiff filed his sworn response, and Defendant filed its reply on November 29, 2018.[3] (docs. 22; 25.)[4] The motion is now ripe for recommendation.

## II. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material."

---

[3] In response to Defendants' summary judgment motion, Plaintiff filed his "Plaintiff's Complaint and Application for Permanent Injunction," with a handwritten designation that it is "In Response to D.A.R.T." (doc. 22 at 1.) This filing is liberally construed as Plaintiff's response to Defendants' motion for summary judgment.

[4] Defendants contend that Plaintiff's response to their October 29, 2018 motion for summary judgment is untimely. (doc. 25.) Plaintiff filed his response one day after the deadline, on November 20, 2018. (docs. 17, 22.) Defendants do not allege any prejudice will result from consideration of Plaintiff's response. (*See* doc. 25.)

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record that reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party can also meet its summary judgment burden by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325 (internal quotation omitted).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Id.* at 324. To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-movant must show that the evidence is sufficient to support a resolution of the factual issue in her favor. *Anderson*, 477 U.S. at 249. "If the [nonmoving party's] theory is . . . senseless [where] no reasonable jury could find in its favor, [then] summary judgment should be granted." *Lottinger v. Shell Oil Co.*, 143 F. Supp. 2d 743, 751 (S.D. Tex. 2001) (quoting *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 468–69 (1992)).

In the qualified immunity context, however, governmental employees asserting the defense in a summary judgment motion need only assert it in good faith. *See Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008); *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007). They have no burden to put forth evidence. *Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629, 633–34 (5th Cir. 2000). The burden then shifts to the non-movant to show that the defense does not apply by identifying specific evidence in the record to show how

5

it presents a genuine issue of material fact for trial.  *See Club Retro, L.L.C. v. Hilton*, 568 F.3d 181,

194 (5th Cir. 2009); *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc);

*see Celotex*, 477 U.S. at 324; *see also RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

"The parties may satisfy their respective burdens by 'citing to particular parts of materials

in the record, including depositions, documents, electronically stored information, affidavits or

declarations, stipulations . . . admissions, interrogatory answers, or other materials.'" *Rooters v.

State Farm Lloyds*, 428 F. App'x 441, 445 (5th Cir. 2011) (citing Fed. R. Civ. P. 56(c)(1)).  While

all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*,

477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither

conclusory allegations nor unsubstantiated assertions satisfy the non-movant's summary judgment

burden, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v.

Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).  There is also "no genuine issue as to any material

fact [if] a complete failure of proof concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Summary judgment in favor

of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish

the existence of an element essential to his case and as to which he will bear the burden of proof at

trial. *Celotex*, 477 U.S. at 322–23.

Generally, the courts liberally construe the pleadings of a *pro se* plaintiff.  *See, e.g., Haines

v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam); *Miller v. Stanmore*, 636 F.2d 986, 988 (5th

Cir. 1981); *Martin v. United States Post Office*, 752 F. Supp. 213, 218 (N.D. Tex. 1990).  However,

the courts have no obligation under Fed. R. Civ. P. 56 "to sift through the record in search of

evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*,

465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th

Cir. 1998)).  Instead, a party opposing summary judgment must "identify specific evidence in the

record" that supports the challenged claims and "articulate the precise manner in which that

evidence supports [a challenged] claim." *Ragas*, 136 F.3d at 458 (citing *Forsyth v. Barr*, 19 F.3d

1527, 1537 (5th Cir. 1994)).[5]

### III. 42 U.S.C. § 1983

Defendants move for summary judgment on Plaintiff's constitutional claims under 42 U.S.C.

§ 1983.[6]  (doc. 15 at 15.)

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of

a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United

States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994).  It "afford[s] redress for violations of

federal statutes, as well as of constitutional norms." *Id.*  To state a claim under § 1983, Plaintiff

must allege facts that show (1) he has been deprived of a right secured by the Constitution and the

laws of the United States and (2) the deprivation occurred under color of state law.  *See Flagg Bros.,*

*Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir.

2005).

---

[5] Although courts liberally construe the pleadings of a *pro se* plaintiff, *see, e.g., Haines*, 404 U.S. at 520–21 (1972), *pro se* litigants are still required to follow applicable rules of procedure, *see Rolen v. City of Brownfield*, 182 F. App'x 362, 364 (5th Cir. 2006) (per curiam). Nevertheless, courts have discretion to overlook technical noncompliance with procedural rules, especially when there is no prejudice to the opposing party. *Grant v. Cuellar*, 59 F.3d 523, 524–25 (5th Cir. 1995).  Because Defendants do not allege any prejudice resulting from Plaintiff's  response being late by one day, it will be considered.  His sworn original petition and sworn response may serve as competent summary judgment evidence "to the extent that [they] comport[] with the requirements of Fed. R. Civ. P. 56(e).  *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994); *accord Barnes v. Johnson*, 204 F. App'x 377, 378 (5th Cir. 2006).

[6] Although Plaintiff does not identify a specific basis for his constitutional claims in his original petition, his response to the summary judgment motion states that his claims arise under § 1983.  (*See* docs. 1-2 at 1-5; 22 at 6-7.) It also clarifies that he is suing the DART Officers in both their individual and official capacities.  (doc. 22 at 1-2.)

A.    *__Heck v. Humphrey__*

Defendants initially move for summary judgment on grounds that any § 1983 claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).  (doc. 15 at 13-15.)

*Heck* provides that a § 1983 plaintiff who seeks to recover damages for an allegedly unconstitutional conviction, imprisonment, or unlawful action that would render a conviction or sentence invalid must first prove that the conviction or sentence has been reversed, expunged, invalidated, or otherwise called into question. *Heck*, 512 U.S. at 486–87.  Here, the evidence shows that Plaintiff was never convicted or sentenced for any crime; the charges against him were dismissed after he successfully completed his requirements under an agreement with the Dallas County District Attorney's Office.  (*See* docs. 16-5 at 6-7; 16-6 at 9-10.)  *Heck* does not apply.

B.    __Qualified Immunity__

Defendants move for summary judgment on Plaintiff's § 1983 claims against the DART Officers in their individual capacities on grounds that they are barred by qualified immunity.  (doc. 15 at 21-22.)

A governmental employee who is sued under § 1983 may assert the affirmative defense of qualified immunity.  *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992).  Qualified immunity protects government officials performing discretionary functions from suit and liability for civil damages to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  Because an official is entitled to immunity from suit, not merely from liability, immunity questions should be resolved as early as possible in the

litigation. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

In deciding whether a defendant is entitled to qualified immunity, courts conduct a two-prong inquiry. Under the first prong, courts consider whether the facts alleged, taken in the light most favorable to the plaintiff, show a violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009). Under the second prong, courts determine whether the violated constitutional right was clearly established within the specific context of the case. *Id.* at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. It is within the discretion of the court to decide which of the two prongs to address first in light of the circumstances particular to each case. *Pearson*, 555 U.S. at 236; *Lytle v. Bexar Cty.*, 560 F.3d 404, 409 (5th Cir. 2009). If the court answers both the constitutional violation and clearly established questions in the affirmative, the officer is not entitled to qualified immunity. *Lytle*, 560 F.3d at 410.

Here, Plaintiff alleges a violation of his rights under the Fourth Amendment of the United States Constitution, which prohibits unreasonable searches and seizures. Generally, a search or seizure without probable cause or warrant is a violation of the Fourth Amendment. *See United States v. Jones*, 234 F.3d 234, 239 (5th Cir. 2000); *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994) ("The right to be free from arrest without probable cause is a clearly established constitutional right."). "Where an arrest is made under authority of a properly issued warrant, the arrest is simply not a false arrest. Such an arrest is not unconstitutional, and a complaint based on such an arrest is subject to dismissal for failure to state a claim." *Thomas v. Sams*, 734 F.2d 185, 191 (5th Cir. 1984) (citing *Rodriguez v. Ritchey*, 556 F.2d 1185, 1191 (5th Cir. 1977) (en banc)). Where there is no

facially valid warrant, probable cause to arrest exists when there is a fair probability that an offense

occurred. *Piazza v. Mayne*, 217 F.3d 239, 246 (5th Cir. 2000). This occurs where the totality of the

facts and circumstances within an officer's knowledge at the time of the arrest were sufficient for

a reasonable person to conclude that a suspect had committed or was committing an offense. *Mesa*

*v. Prejean*, 543 F.3d 264, 269 (5th Cir. 2008) (citing *United States v. McCowan*, 469 F.3d 386, 390

(5th Cir. 2006)). A fair probability that an offense is being committed or was committed requires

more than a bare suspicion, but less than a preponderance of the evidence. *United States v. Watson*,

273 F.3d 599, 602 (5th Cir. 2001). A mistake made as to probable cause, so long as it is reasonably

made, justifies qualified immunity. *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005).

Although the DART Officers met their burden simply by asserting the qualified immunity

defense, they have also submitted evidence to show that Plaintiff's warrantless arrest was supported

by probable cause, including affidavits from each of the Officers, transcripts of audio recordings,

police reports, and an investigation report from the DART Police Office of Professional Standards.

(*See* docs. 16-1-16-7.) It shows that Plaintiff was on DART property when Officer Davis initially

made contact with him, that he responded to Officer Davis with profanity and continued to use

profanity while on DART property in violation of DART's code of conduct, that Officer Davis

informed him that he would have to leave DART property if he continued to violate the code of

conduct, and that Plaintiff continued to use profanity regardless of Officer Davis's warning. (doc.

16-1 at 1-2, 18-20, 37.) It also shows that Officer Davis instructed Plaintiff to "come here," Plaintiff

ignored the instruction and boarded the DART train without a valid train ticket, the DART Officers

followed him onto the train and instructed him to depart from the train multiple times, and he

continually refused. (*Id.*) The DART Officers were forced to remove Plaintiff from the train and

10

subsequently arrested him for criminal trespass as a result of his refusal to leave DART property after being asked to do so. (*Id.* at 3, 22-24, 37.)[7] In addition, Plaintiff was searched incident to his arrest, and the DART Officers found marijuana in his possession. (*Id.* at 4, 37-38.)[8]

Even without an arrest warrant for Plaintiff, the DART Officers have provided evidence demonstrating a fair probability to believe that an offense was being committed based on the totality of the circumstances. Plaintiff's use of profanity in response to Officer Davis's questions, his use of profane and derogatory language on DART property, his attempt to ride the DART train without an active DART pass, his refusal to depart the train or DART property after receiving notice to do so, and his possession of marijuana provided the DART Officers with probable cause to arrest him for criminal trespass and possession of marijuana.[9] *Emesowum v. Zeldes*, No. SA-15-CV-831-XR, 2016 WL 3579232, at *5–6 (W.D. Tex. June 27, 2016) (finding that officers were entitled to qualified immunity because they had probable cause to arrest the plaintiff for criminal trespass where he refused to leave a bus station after being asked to leave).[10]

The burden now shifts to Plaintiff to produce evidence showing that the DART Officers

---

[7] Under Texas law, a person commits the offense of criminal trespass if he "enters or remains on or in the property of another, . . . without effective consent and the person: . . . (2) received notice to depart but failed to do so." Tex. Penal Code Ann. § 30.05(a)(2).

[8] Under Texas law, "a person commits an offense if the person knowingly or intentionally possesses a usable quantity of marihuana." Tex. Health & Safety Code Ann. § 481.121(a).

[9] Plaintiff does not appear to base his claims off of his arrest for possession of marijuana. (*See* docs. 1-2 at 1-5; 22.) To the extent he does, the DART Officers also asserted their qualified immunity defense for any claims based on that arrest, and they produced evidence showing that they had probable cause to arrest Plaintiff for possession of marijuana based on the search incident to his lawful arrest. *See* Tex. Health & Safety Code Ann. § 481.121(a); *Emesowum*, 2016 WL 3579232, at *6 (citing *Riley v. California*, 573 U.S. 373, 382 (2014)) ("It is well established that a police officer may conduct a warrantless search of a person incident to the person's lawful arrest.").

[10] Notably, even if Plaintiff had an active DART pass, as he claims, "purchasing a ticket does not grant a patron unfettered access to a place of business or prevent an employee of that business from ordering the patron to leave." *Emesowum*, 2016 WL 3579232, at *5 (citing cases).

11

violated his constitutional rights under the Fourth Amendment, and that the violation was objectively unreasonable under clearly established law.  *See Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407–08 (5th Cir. 2007).  He has not presented any evidence and makes only conclusory statements in his sworn response that his arrest was unlawful because it was "supported neither by a warrant nor probable cause."  (*See* doc. 22 at 3-4, 6.)  Conclusory statements are not enough to meet his burden to produce sufficient evidence showing that the DART Officers violated his Fourth Amendment right to be free from an unlawful arrest without probable cause to support a resolution of the factual issue in his favor.  *Anderson*, 477 U.S. at 249; *Stagliano v. Cincinnati Ins. Co.*, 633 F. App'x 217, 219 (5th Cir. 2015) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)) ("[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.").  No genuine issue exists at to any material fact regarding any claim of unlawful arrest under the Fourth Amendment, and the DART Officers are entitled to judgment as a matter of law on this claim against them in their individual capacities.  *See Skinner v. Gragg*, 650 F. App'x 214, 217–18 (5th Cir. 2016) (affirming summary judgment based on qualified immunity where the officer had probable cause to arrest an individual for criminal trespass) *White v. City of Dallas*, No. 3:12-CV-2145-O(BH), 2013 WL 821972, at *4 (N.D. Tex. Feb. 13, 2013) (finding that police officers were entitled to summary judgment on unlawful seizure/false arrest claims based on qualified immunity).[11]

---

[11] Although Plaintiff does not appear to assert a claim for false imprisonment, Defendants also move for summary judgment on any such claims against the Dart Officers based on qualified immunity.  (doc. 15 at 21-22.)  To the extent Plaintiff is asserting a claim for false imprisonment, Defendants are entitled to summary judgment because as discussed, the evidence shows that the officers had probable cause to arrest Plaintiff for criminal trespass and possession of marijuana, "and so the subsequent detainment was lawful."  *Emesowum*, 2016 WL 3579232, at *6 (granting summary judgment in favor of officers based on qualified immunity on a false imprisonment claim where the arrest was supported by probable cause); *see Wal–Mart Stores, Inc. v. Resendez*, 962 S.W.2d 539, 540 (Tex. 1998) ("[I]f the alleged detention was performed with the authority of law, then no false imprisonment occurred.").

C.    **Municipal Liability**

Defendants also move for summary judgment on Plaintiff's claims against DART and the

DART Officers in their official capacities on grounds that Plaintiff "fails to identify any official

policy or custom; does not identify a final policymaker; and fails to show" that any "DART policy

or custom was the moving force of any alleged constitutional violation."  (doc. 15 at 15.)

Municipalities, including counties, cities, and DART, may be held liable under § 1983.

*Hampton Co. Nat'l Sur., LLC v. Tunica Cty.*, 543 F.3d 221, 224 (5th Cir. 2008); *Craig v. Dallas*

*Area Rapid Transit Auth.*, 504 F. App'x 328, 334 (5th Cir. 2012) (recognizing that DART is a

municipal entity).[12]  A municipality may be liable if the execution of one of its customs or policies

deprives a plaintiff of his or her constitutional rights.  *Monell v. Dep't of Social Servs.*, 436 U.S. 658,

690–91 (1978); *Jones v. City of Hurst, Tex.*, No. 4:05-CV-798-A, 2006 WL 522127, at *3 (N.D.

Tex. Mar. 2, 2006) (citing *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)).  It is

well-settled that a municipality cannot be liable under a theory of *respondeat superior*, however.

*Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing cases).  "Under the

decisions of the Supreme Court and [the Fifth Circuit], municipal liability under section 1983

requires proof of three elements: a policy maker; an official policy; and a violation of constitutional

rights whose 'moving force' is the policy or custom."  *Id.* (citing *Monell*, 436 U.S. at 694); *see also*

*Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010); *Cox v. City of Dallas*, 430 F.3d 734,

748 (5th Cir. 2005).  Official municipal policy includes the decisions of a government's lawmakers,

the acts of its policymaking officials, and practices so persistent and widespread as to practically

---

[12]Plaintiff's official capacity claims against the DART Officers are merely another way of pleading this action against their employer, DART.  *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Stiff v. Stinson*, No. 3:12-CV-4998-D, 2013 WL 3242468, at *3 (N.D. Tex. June 27, 2013) (citing *Graham*, 473 U.S. at 165).

have the force of law.  *Monell*, 436 U.S. at 691–95.

### 1.    Policymaker

Defendants contend that they are entitled to summary judgment because Plaintiff has not identified any policymaker.  (doc. 15 at 16-17.)

A policy or custom is official only "when it results from the decision or acquiescence of the municipal officer or body with 'final policymaking authority' over the subject matter of the offending policy."  *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)).  For municipal liability, a plaintiff must show the policy was promulgated by the municipality's policymaker.  *Id.*  There is no "de facto" final policymaking authority.  *Id.* at 848 (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 131 (1988)); accord *Gros v. City of Grand Prairie*, 181 F.3d 613, 616 n.2 (5th Cir. 1999).  "A policymaker is 'one who takes the place of the governing body in a designated area of city administration.'"  *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 167 (5th Cir. 2010) (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam)).  "He or she must 'decide the goals for a particular city function and devise the means of achieving those goals.'" *Id.* (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984)).

Here, Defendants argue that Plaintiff "does not identify any policymaker for any of the alleged civil rights claims he may have against DART."  (doc. 15 at 16-17.)  Plaintiff does not respond to this argument, and even considering his sworn filings, he fails to allege, identify, or put forth any evidence regarding a policymaker.  (*See* docs. 1-2 at 1-5; 22.)  He claims only that the policy was invoked by Officer Davis's supervisor and that DART's official spokesman stated that DART believed the DART Officers acted properly.  (doc. 22 at 7.)  He does not identify either the

14

supervisor or spokesman as DART policymakers, and the conclusory statements in his sworn response are insufficient to defeat summary judgment. *See Stagliano*, 633 F. App'x at 219. By failing to respond to DART's argument or submit evidence showing that any alleged unconstitutional policy was promulgated by a DART policymaker, Plaintiff has failed to raise a genuine dispute of material fact as to this element. *See Graham v. Dallas Area Rapid Transit*, 288 F. Supp. 3d 711, 727–28 (N.D. Tex. 2017).

### 2.    Official Policy or Custom

Defendants also contend that they are entitled to summary judgment because Plaintiff has no evidence of an "official policy, custom, or widespread practice." (doc. 15 at 17-18.)

"Official policy" is defined as:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster*, 735 F.2d at 841; *accord Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). A single constitutional violation is ordinarily insufficient to show a customary municipal policy, however. *Piotrowski*, 237 F.3d at 581 (citing *Webster*, 735 F.2d at 851). "Isolated violations are not the persistent, often repeated, constant violations, that constitute custom and policy as required for municipal section 1983 liability." *Id.* (quoting *Bennett*, 728 F.2d at 768 n.3). "If actions of city employees are to be used to prove a custom for which the municipality is liable, those actions must

have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Webster*, 735 F.2d at 842.

To meet their initial summary judgment burden, Defendants point to DART Police General Order 7.01, which provides that arrests made without a warrant must be supported by probable cause. (docs. 15 at 17-18; 16-8 at 1.) They contend that "Plaintiff has not alleged and has presented no evidence to dispute DART's facially lawful arrest policies," and he has not presented any evidence of a policy, custom, or widespread practice "of DART officials that would constitute a custom that fairly represents DART policy." (doc. 15 at 18.) In identifying DART's official policy and pointing to Plaintiff's lack of any evidence of any other policy or custom, Defendants have met their initial burden. *See Celotex*, 477 U.S. at 325. Accordingly, the burden shifts to Plaintiff to identify evidence in the record that raises a genuine issue of material fact.

In his sworn response, Plaintiff contends that "DART policy permits its police officers to issue criminal trespass warnings" and arrest individuals for criminal trespass if they are on DART property "for purposes other than to utilize public transportation services." (doc. 22 at 5, 7.) He claims that he was arrested without probable cause while waiting for "a public train in a public place" in violation of his constitutional rights, and that DART's policy was the moving force behind the constitutional violations. (*Id.*) He points to 254 alleged arrests for criminal trespass that occurred "[f]rom January to July 2016 alone" as a result of DART's policy. (*Id.*) To the extent he relies on the number of alleged arrests for criminal trespass as evidence that the alleged policy is unconstitutional, he has not shown that any of those arrests were unlawful or resulted from individuals simply waiting for "a public train in a public place . . . ." *See Robinson v. City of*

*Garland, Tex.*, No. 3:10-CV-2496-M, 2016 WL 7396048, at *12 (N.D. Tex. Aug. 17, 2016). "Without more, Plaintiff's summary judgment evidence amounts to a bare [conclusion], and he has not met his burden." *Id.* (citing *Peterson*, 588 F.3d at 852). Accordingly, Plaintiff has failed to provide sufficient evidence to create a genuine issue of material fact regarding a policy or custom supporting unconstitutional arrests for criminal trespass.

Because Plaintiff has failed to provide sufficient evidence to create a genuine issue of material fact regarding a policymaker and a policy or custom of unlawful arrests for criminal trespass, Defendants are entitled to summary judgment on Plaintiff's Fourth Amendment claims against DART and the DART Officers in their official capacities.[13]  *See Graham*, 288 F. Supp. 3d at 727–28 (N.D. Tex. 2017) (granting a motion for summary judgment in favor of DART where the plaintiff failed to present sufficient evidence "to raise a genuine dispute of material fact" to establish municipal liability).[14]

## IV. STATE LAW CLAIMS

Defendants also move for summary judgment on any state law claims asserted by Plaintiff.

---

[13] Because Plaintiff has not identified a genuine issue of material fact as to the first two elements, it is unnecessary to reach Defendants' argument that he also failed to show that any policy or custom was the "moving force" behind any alleged constitutional violation. (doc. 15 at 18.)  Moreover, as discussed, Plaintiff has also not identified sufficient evidence of a constitutional violation of his Fourth Amendment rights to create a genuine issue of fact. Although Defendants do not specifically argue that hemhas not established a constitutional violation, they would also be entitled to summary judgment on this basis because there can be no municipal liability under § 1983 without a constitutional violation.  *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Alpha v. Hooper*, 440 F.3d 670, 672 (5th Cir. 2006) (affirming lower court ruling that there was no basis for municipal liability because there was no constitutional violation).

[14] Although Plaintiff does not appear to assert a claim for malicious prosecution, Defendants move for summary judgment on any such claim that Plaintiff may be asserting on grounds that such a claim is not viable under § 1983. (doc. 15 at 22.)  To the extent Plaintiff is asserting Defendants "violated his constitutional rights by engaging in malicious prosecution," the Fifth Circuit has held that "a freestanding 42 U.S.C. § 1983 claim based solely on malicious prosecution was not viable."  *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812–13 (5th Cir. 2010) (citing *Castellano v. Fragozo*, 352 F.3d 939, 958 (5th Cir. 2003)).  Accordingly, Defendants are entitled to summary judgment as a matter of law on any claim for malicious prosecution asserted under § 1983.  *See id.*

(doc. 15 at 25-28.)[15]

Under § 1367(a), federal courts have "supplemental jurisdiction over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." In essence, § 1367(a) grants the courts the "power to hear a state law claim under pendent or supplemental jurisdiction if (1) the federal issues are substantial, even if subsequently decided adverse to the party claiming it; and (2) the state and federal claims derive from a common nucleus of operative fact." *McKee v. Texas Star Salon, LLC*, No. 3:15-CV-1162-D, 2007 WL 2381246, at *4 (N.D. Tex. Aug. 21, 2007) (citations omitted); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1996).

When all federal claims are dismissed prior to trial, the general rule in this circuit is to decline exercising jurisdiction over the remaining state law claims. *LaPorte Constr. Co. v. Bayshore Nat'l Bank*, 805 F.2d 1254, 1257 (5th Cir. 1986); *see also* 28 U.S.C. § 1367(c)(3). This rule is "neither mandatory nor absolute." *Smith v. Amedisys Inc.*, 298 F.3d 434, 447 (5th Cir. 2002) (citation omitted). Rather, district courts are given wide discretion in deciding whether to exercise jurisdiction under such circumstances. *See Heaton v. Monogram Credit Card Bank*, 231 F.3d 994, 997 (5th Cir. 2000); *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993); *see also United Mine Workers*, 383 U.S. at 726 ("[P]endent jurisdiction is a doctrine of discretion, not of [a] plaintiffs right."). In exercising this discretion, courts should consider issues of judicial economy, convenience, and fairness to the litigants. *LaPorte Constr. Co.*, 805 F.2d at 1257. However, "no single factor is dispositive." *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008).

---

[15] It is unclear from his original petition if Plaintiff is asserting any state law claims as he makes only general allegations of assault, defamation, and intentional conduct, and he does not discuss any state law claims in his response to Defendants' motion. (*See* docs. 1-2 at 1-5; 22.)

Here, the factors weigh in favor of retaining jurisdiction over Plaintiff's state law claims, which arise from the same "common nucleus of operative facts" as his federal claims, i.e., his allegedly unlawful arrest for criminal trespass and possession of marijuana. (*See* docs. 1-2 at 1-5; 22.) Requiring Plaintiff to litigate his claims in state court would "necessarily require consideration by two distinct courts of the same operative fact[s]" and the "same legal issues." *See McKee*, 2007 WL 2381246, at *4. Given Plaintiff's failure to meet his summary judgment burden against Defendants in federal court, allowing him to file suit in state court would impose unnecessary expenses on the court system and the parties involved. *See McCall v. Peters*, No. CIV.A. 3:00-CV-2247-D, 2003 WL 21488211, at *12 (N.D. Tex. May 12, 2003), *aff'd*, 108 F. App'x 862 (5th Cir. 2004) (in determining whether to exercise pendent or supplemental jurisdiction, the court may consider factors such as the amount of time and resources spent adjudicating the case). Because all three factors weigh in favor of retaining jurisdiction over Plaintiff's state law claims, the Court should exercise supplemental jurisdiction and review the claims on the merits.

A.    **Election of Remedies**

Defendants move for summary judgment on any state law claims against the DART Officers in their individual capacities on grounds that they are barred under § 101.106 of the Texas Tort Claims Act (TTCA). (doc. 15 at 25-27.)

Under the election-of-remedies provisions of the TTCA, a plaintiff who sues under the TTCA must elect between suing a governmental unit and suing an employee of that unit. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106; *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 462 (5th Cir. 2010). If he sues the governmental unit, the suit "constitutes an irrevocable election" by him and "bars any suit or recovery by [him] against any individual employee of the governmental unit

19

regarding the same subject matter." Tex. Civ. Prac. & Rem. Code Ann. § 101.106(a). The TTCA specifically provides that:

> (e)      If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees *shall immediately be dismissed* on the filing of a motion by the governmental unit.
>
> (f)      If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only.  On the employee's motion, the suit against the employee *shall be dismissed* unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

*Id*. at § 101.106(e), (f) (emphasis added).  "Although recognized as a harsh grant of immunity, [§ 101.106] serves the purpose of protecting government employees from individual liability for acts or omissions where a claim based upon the same facts is made against their employers." *Jackson v. Dallas Indep. Sch. Dist.*, No. 3:98-CV-1079-D, 1999 WL 58846, at *5 (N.D. Tex. Feb. 1, 1999) (internal quotation marks and citation omitted), *aff'd*, 232 F.3d 210 (5th Cir. 2000) (unpublished table decision) (per curiam); *accord Dorward v. Ramirez*, No. 3:09-CV-0018-D, 2009 WL 2777880, at *14 (N.D. Tex. Aug. 28, 2009) (citing *Jackson*, 1999 WL 58846, at *5).  The election-of-remedies provisions in § 101.106 cover all state tort claims, whether intentional or negligent, and whether brought under common law or the TTCA.  *Bustos*, 599 F.3d at 463-64.

Here, there is no dispute that Plaintiff is asserting his claims against governmental employees as well as against their employing governmental unit, regarding the same subject matter.  (*See* docs. 1-2 at 1-5; 22.)  By suing DART, he has made an irrevocable election of remedies and is barred from suing the individual DART Officers regarding the same subject matter.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106(a).  Because DART has moved for summary judgment on any alleged state

20

law claims against the individual DART Officers, they are entitled to summary judgment as a matter of law, and to the extent Plaintiff asserts any state law claims against them in their individual capacities, those claims must be dismissed. *See id.* at § 101.106(e); *Craig*, 504 F. App'x at 333–34 (finding that DART officers were entitled to be dismissed from the lawsuit because the plaintiff sued both DART and its officers).

## B.    TTCA

Defendants also move for summary judgment on any state law claims asserted against DART on grounds that they are barred under § 101.057(2) of the TTCA. (doc. 15 at 27.)[16]

The TTCA "provides a limited waiver of sovereign and governmental immunity for certain tort claims, 'allowing suits to be brought against governmental units only in certain, narrowly defined circumstances.'" *Dorward v. Ramirez*, No. 3:09-CV-0018-D, 2009 WL 2777880, at *13 (N.D. Tex. Aug. 28, 2009) (quoting *Tex. Dep't of Crim. J. v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001)). DART, a municipal entity, falls within the parameters of the TTCA. *See Craig*, 504 F. App'x at 334 (applying the TTCA to claims against DART). This "waiver of immunity constitutes the 'only . . . avenue for common-law recovery against the government' on a tort theory." *Id.* (quoting *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008)). It expressly does not apply to claims "arising out of assault, battery, false imprisonment, or any other intentional tort." Tex. Civ. Prac. & Rem. Code Ann. § 101.057(2); *see also Dorward*, 2009 WL

---

[16] Plaintiff's state law claims against the DART Officers in their official capacities are merely another way of asserting those claims against DART under state law. *Franka v. Velasquez*, 332 S.W.3d 367, 382 n.68 (Tex. 2011) (finding that "a suit against a state official is merely 'another way of pleading an action against the entity of which [the official] is an agent.'"); *Hammers v. City of Dallas*, No. 3:13-CV-03659-M-BK, 2015 WL 3948169, at *3 (N.D. Tex. May 13, 2015) (citing *Franka*, 332 S.W.3d at 382 n.68) (recognizing that claims against a government official in her official capacity were the same as asserting the claims against the government itself under Texas law), *adopted by* 2015 WL 3949402 (N.D. Tex. June 29, 2015).

2777880, at *13 (citing *Tex. Dep't of Crim. J.*, 51 S.W.3d at 587); *Swiat v. City of Fort Worth*, No. 4:10-CV-354-A, 2011 WL 2559637, at *5 (N.D. Tex. June 28, 2011) (considering the scope of § 101.057(2)).

As noted, it is unclear what state law claims, if any, Plaintiff is attempting to assert against DART. (*See* docs. 1-2 at 1-5; 22.) His original petition makes general allegations of defamation and assault and contends that all acts complained of "were intentional, knowing and malicious." (doc. 1-2 at 2-4.) Even liberally construing his original petition as asserting claims for assault, defamation, or any other intentional tort, the TTCA expressly does not apply to claims for assault or other intentional torts, including defamation. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.057(2); *Williams v. City of Irving, Tex.*, No. 3:15-CV-1701-L-BH, 2017 WL 3822115, at *9 (N.D. Tex. July 14, 2017) (identifying defamation as an intentional tort that is barred under the TTCA), *adopted by* 2017 WL 3726980 (N.D. Tex. Aug. 30, 2017). To the extent Plaintiff is attempting to assert any such state law claims against DART, it has immunity from any intentional tort claims under the TTCA, and it and the DART Officers in their official capacities are entitled to summary judgment on those claims as a matter of law. *See Craig*, 504 F. App'x at 334 (affirming dismissal of intentional tort claims against DART under the TTCA on summary judgment).[17]

## V. REMAINING CLAIMS

For the first time in his response, Plaintiff claims that his arrest also violated his First

---

[17] Defendants also move for summary judgment to the extent Plaintiff seeks exemplary damages under the TTCA. (doc. 15 at 27-28.) The TTCA expressly does not allow for exemplary damages against a governmental entity such as DART, and therefore Defendants are also entitled to summary judgment on any claim for exemplary damages under the TTCA as a matter of law. *See* Tex. Civ. Prac. & Rem.Code § 101.024.

Amendment rights.  (doc. 22 at 5-7.)[18]  Defendants' reply did not address any First Amendment claims.  (*see* doc. 25.)

A district court may grant a motion for summary judgment on grounds not raised by the moving party, provided that the non-moving party is first given notice and a reasonable time to respond.  Fed. R. Civ. P. 56(f); *see also St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 435 (5th Cir. 2001); *Ross v. University of Texas*, 139 F.3d 521, 527 (5th Cir. 1998).  The fourteen day period for objecting to a magistrate judge's recommendation to grant a motion for summary judgment is sufficient notice under Rule 56(f).  *See Dupry v. Gehrig*, No. 08-CV-1036, 2009 WL 2579055, *4 (W.D. La. Aug. 20, 2009) (stating that the previous ten-day objection period satisfied the ten-day notice requirement under Rule 56); *St. Paul Mercury Ins. Co.*, 224 F.3d at 435 (stating that a party should be provided at least ten days notice before a court grants summary judgment *sua sponte*).

## A.    **DART Officers**

Plaintiff alleges that the individual DART Officers violated his First Amendment rights when they arrested him for waiting on the DART train in a public place because "[a]waiting public

---

[18] Because Plaintiff is proceeding *pro se*, his pleadings are to be provided "a liberal construction."  *Brown v. Sudduth*, 675 F.3d 472, 477 (5th Cir. 2012).  As a general rule, "[a] claim which is not raised in the complaint but, rather is raised only in response to a motion for summary judgment is not properly before the court."  *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005); *see also Hoffman v. L & M Arts*, 838 F.3d 568, 576 (5th Cir. 2016) ("[A] district court considering a defendant's motion for summary judgment does not err by disregarding a theory of liability asserted in the plaintiff's response that was not pleaded as required by the applicable pleading standard.").  Nevertheless, the Fifth Circuit has held that courts should construe new theories in a summary judgment response as a motion to amend.  *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 989 n.2 (5th Cir. 2008); *Debowale v. U.S. Inc.*, 62 F.3d 395 (5th Cir. 1995) (per curiam) (holding that "[t]he district court should have construed [the plaintiff's] *Bivens* claim, raised for the first time in his response to the summary judgment motion, as a motion to amend the complaint under [Rule] 15(a) and granted it"); *Cash v. Jefferson Assocs., Inc.*, 978 F.2d 217, 218 (5th Cir. 1992) (deciding that a response to a motion to dismiss in which plaintiff first alleged that she had been willfully discriminated against should be treated as a motion to amend).  "This is particularly true where . . . the litigant is *pro se* and has not yet made any amendments to her complaint."  *Riley v. Sch. Bd. Union Par.*, 379 F. App'x 335, 341 (5th Cir. 2010).  Accordingly, Plaintiff's First Amendment claims are construed as a motion to amend and granted.

transportation in public is a legitimate means of gathering information for public dissemination . . . ." (doc. 22 at 6.) He further claims that his arrest for criminal trespass was a means of preventing him "from exercising his First Amendment right to assemble in a public place." (*Id*. at 5.)

The First Amendment proscribes that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I. The Fifth Circuit has recognized that where an arrest is involved, "[o]ften times, the validity of a plaintiff's First Amendment claim hinges on probable cause for [his] arrest." *Westfall v. Luna*, 903 F.3d 534, 550 (5th Cir. 2018) (citing *Mesa v. Prejean*, 543 F.3d 264, 273 (5th Cir. 2008)).

Here, Plaintiff does not present any evidence in support of his claims, and makes only conclusory statements that he was engaged in conduct protected by the First Amendment. (*Id*. at 5-6.) Even considering his sworn filings, his conclusory allegations fail to show that he was gathering information or engaging in any constitutionally protected conduct while on DART property. While his allegations appear to implicate the right to peaceably assemble, which is protected by the First Amendment, Plaintiff provides no evidence other than his conclusory allegations that he was engaged in such conduct. Even assuming Plaintiff's conclusory statements sufficiently show that he was engaged in conduct protected under the First Amendment, he has not shown that he was arrested for engaging in any constitutionally protected conduct or that his arrest was not supported by probable cause. *See Eisenbach v. Zatzkin*, 728 F. App'x 307, 311 (5th Cir. 2018) (finding that probable cause to arrest the plaintiff was fatal to his First Amendment claim); *Graham*, 288 F. Supp. 3d at 728 n.7 (noting that any First Amendment claim would fail because the

24

plaintiff did not show "that he was detained or arrested" for engaging in conduct protected by the First Amendment).  Accordingly, summary judgment should be granted *sua sponte* in favor of the DART Officers in their individual capacities on any First Amendment claims.

## B.    DART

Plaintiff also alleges that his arrest violated his "First Amendment right to assemble in a public place," and that DART's "policy of permitting warnings and arrest[s] for criminal trespass" was the moving force behind this violation.  (doc. 22 at 5, 7.)

As with his Fourth Amendment claims against DART, Plaintiff fails to identify a policymaker or present any evidence that any policy was promulgated by a policymaker in relation to his First Amendment claims.  *See Peterson*, 588 F.3d at 847.  He similarly fails to present any evidence of a policy or custom aside from the conclusory allegations in his sworn response, which are insufficient to meet his burden on summary judgment.  *See Stagliano*, 633 F. App'x at 219.  Accordingly, summary judgment should be *sua sponte* granted in Defendants' favor on any First Amendment claims asserted against DART and the DART Officers in their official capacities for the same reasons they are entitled to summary judgment on his Fourth Amendment claims.[19]  *See Graham*, 288 F. Supp. 3d at 727–28 (finding that DART was entitled to summary judgment where the plaintiff "failed to provide even a scintilla of evidence to support his claims against DART.").[20]

---

[19] Plaintiff's sworn response also alleges that DART "failed to adequately train, supervise, or discipline its officers about the First Amendment right in public . . . ."  (doc. 22 at 7.)  To the extent Plaintiff is attempting to assert a separate claim based on these conclusory allegations, he presents no evidence in support.  (*See id*.)  He relies only on his conclusory statements, which as noted, are insufficient to support any such claims on summary judgment.  *See Stagliano*, 633 F. App'x at 219.  Summary judgment in Defendants' favor on any such claims *sua sponte* is also proper because Plaintiff has failed to identify any supporting evidence and the Court has no obligation "to sift through the record in search of evidence to support" his claim.  *See Adams*, 465 F.3d at 164 (quoting *Ragas*, 136 F.3d at 458).

[20] As noted, even if Plaintiff had presented sufficient evidence of the elements of municipal liability, he has failed to establish any constitutional violation because the evidence shows that his arrest was supported by probable cause, so Defendants would also be entitled to summary judgment on this ground. *See City of Los Angeles*, 475 U.S. at

## VI. INJUNCTIVE RELIEF

Defendants finally move for summary judgment on Plaintiff's claim for injunctive relief on grounds that "Plaintiff cannot meet the required elements for an injunction." (doc. 15 at 23-25.)

To obtain injunctive relief, a plaintiff "is required to plead and prove, inter alia, 'a substantial likelihood of success on the merits.'" *Jackson v. Fed. Home Loan Mortg. Corp.*, No. 4:11-CV-507-A, 2011 WL 3874860, at *3 (N.D. Tex. Sept. 1, 2011) (citing *DSC Commc'ns Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996)). Because all of Plaintiff's substantive claims fail on the merits, he cannot establish any likelihood of success on the merits. His request for injunctive relief should therefore be denied as a matter of law, and summary judgment is proper for Defendants on his request for injunctive relief. *See Wells v. Bank of America, N.A.*, No. 3:17-CV-3658-M, 2015 WL 4269089, at *8–9 (N.D. Tex. July 14, 2015) (dismissing a request for injunctive relief on summary judgment where the plaintiff's underlying claims were subject to dismissal); *Nelson v. Wells Fargo Home Mortg.*, No. 3:10-CV-1771, 2012 WL 6928579, at *6 (N.D. Tex. Nov. 5, 2012), *adopted by* 2013 WL 271537 (N.D. Tex. Jan. 22, 2013) (finding request for injunctive relief failed as a matter of law where the plaintiff failed to demonstrate any well-founded causes of action against the defendant).

## VII. RECOMMENDATION

Defendants' motion for summary judgment should be **GRANTED**, and summary judgment should be *sua sponte* **GRANTED** in favor of Defendants on Plaintiff's remaining claims.

---

799; *Alpha*, 440 F.3d at 672 (affirming lower court ruling that there was no basis for municipal liability because there was no constitutional violation).

**SO RECOMMENDED** on this 8th day of July, 2019.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996)..

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE